24, 2097 Thank you. May it please the court. My name is Shira Kival. I represent Mr. Calderon. The district court in this case plainly erred when at the government's behest it sentenced Mr. Calderon as an aggravated felon when the government now admits Mr. Calderon was never convicted of an aggravated felony. This court should presume error in this case because this type of statutory range error puts upward pressure on the final sentence. But even if this court doesn't presume prejudice, it should still reverse because there's a reasonable probability that the district court's misperception of the seriousness of Mr. Calderon's criminal history actually influenced the sentence in this case. I was just wondering if you were conceding that there isn't any actual prejudice. No, Your Honor, definitely not. I plan to address all three of these issues. The government, as I said, agrees that Mr. Calderon is not an aggravated felon, but argues the error here isn't plain and isn't prejudicial. So my intention is to focus on both prongs two and three and that both of those prong three arguments today. The difference in the sentencing range would not have affected the guidelines range, correct? That's correct. It would have been the same either way. Yes, the numerical guideline range doesn't change, but I do think that the gestalt of the guidelines range changes. So you can think of a few different defendants who maybe all have the same guidelines range, like this case, three to four years, and they're going to come into court in really different positions if, say, the statutory maximum is five years, ten, twenty, or maybe life. So someone who comes in with a three to four year range and the stat max is five years, that guidelines range feels very serious. And so that's going to change how the district court perceives arguments about whether it should go low within the range or below the range. You can think that conversely, let's say we have someone with a lifetime sentence, they're coming in and their guidelines range of three to four years already looks really lenient, excuse me, already looks really lenient. And that's going to impact if they say, oh, I want more lenience. That higher statutory maximum is going to put upward pressure on the sentence because it's going to look like they already got lenience and don't necessarily need any more. Well, help me out here. Are we saying that, are you saying that there's evidence here that the sentence will be different? So I'm making two arguments. The first one is that prejudice should be presumed just like it is with guidelines range error. But the second one, yes, is that there is evidence here that it mattered. So I'm happy to address that first. I think, you know, the error in this case went to the heart of what Congress says is important. Congress's statutory range that it sets out is Congress's statement of the seriousness of the offense. And here there's an offense that is zero to 10 years. And there's an offense that's twice as serious. The deportation, excuse me, reentry after you've been removed after an aggravated felony that's twice as serious, up to 20 year maximum sentence. And it's more serious for a number of reasons. But one of them is you've been told when you're removed, you've been convicted of an aggravated felony. You may never reenter the United States no matter what. And so your actual act of reentering is more serious. But also, it's also more serious because it's about a statement, Congress's statement about the seriousness of your criminal history. How big of a deal is it that you've come back to the United States just as a general public safety measure? So it's Congress's statement that this is a much more serious offense. And Congress also instructs the district court, you need to consider the statutory range, right, the available sentences. That's one of the 3553A factors. And you also need to consider the, you need to design a sentence that's sufficient but no greater than necessary to reflect the seriousness of the offense. Does the district court have to start with a parsimony principle with the seriousness of the offense, with the seriousness of the criminal history? Or does 3553A with regard to those particular considerations simply require the judge at some point before he or she imposes the sentence to consider those? I don't think that it needs to be the very first thing that the district court does. Isn't that a big difference with the guideline range under Pew, Gall, and Molina-Martinez, which says, and I think in Molina-Martinez as well as Semmings, whatever it was, Judge Gorsuch's opinion in 2014, that the problem, that the presumption of prejudice for a guideline range mistake is because that's the starting point of the judge's inquiry into the sentence. And so if a judge, for example in McLeod, if a judge goes through the 3553A factors and says, okay, well the sentence is going to be eight years, now I'm going to just check and make sure that that's not over the maximum range or that it's within the statutory range, that is a legitimate consideration of 3553A. There's nothing wrong with that, right? I actually, that very last part I would disagree with. So I think there's a few things that I want to say to respond. So obviously Molina-Martinez was a different case addressing a different error, but the reasoning I believe applies. And it's not just a question of chronology. The idea of a benchmark or an anchor is about numbers that come before you reach your final decision. You know, the dissent in McLeod, the Seventh Circuit inquiry have called this an anchor. And I think that's rightly so, because I don't think that the proposal you give would be proper to say eight years, okay, now let me make sure that that's within the statutory range. Because reaching that eight years, you have to have already gone through the person mini-principle. You can't kind of do that afterward. You have to say what sentence is sufficient but no greater than necessary. And that requires, and the Third Circuit agreed in Payano that that requires the court to consider what the statutory maximum range is, which I think without a doubt it does if you look at, I don't know how you would do, perform the 3553A requirements without doing that. What about the other two? The seriousness of the offense or the seriousness of the criminal history? I think all of those things have to be done in advance before you come up with the finer figure. They're all inputs. If chronology is really important though, as the McLeod dissent points out, even if it's not the first number that the judge calculates, it is the first number that the judge sees. And we have that in this case too. It's the first page of the pre-sentence report, and that's the document that's essentially the roadmap for the district court for the sentencing hearing. And it's the first page of the government's sentencing memorandum where the government says, you know, this argument you're making that your criminal history is kind of overinflated here, uh-uh. You should not just not get a downward variance, you should get the top of the guidelines. I know we're jumping around a little bit between the different arguments here, but going back to what the evidence of prejudice specific in this case is, you know, first I think you have to consider this upward pressure that you get by a matter of necessity. That's part of the equation. Part of the equation is that Congress has said that this is important. This is what makes a reentry offense more or less serious, is what you were deported after. And then finally, that error goes to what the disagreement at sentencing was. So the district, you know, Mr. Calderon says, my criminal history, you know, this New York conviction is kind of doing all this business to my guidelines. My criminal history is not that serious. Please vary downwards. And the government comes back and says, no, sentence this aggravated felon at the top of the guidelines range. Did it say this aggravated felon or this person who had committed a serious drug traffic offense? It said this person who, well, I don't want to paraphrase, literally said 1326b2 in the citation in the first paragraph of its sentencing memorandum. So it doesn't say the government. Oh, I'm sorry. I'm talking about the judge. The judge doesn't ever refer to the fact that he was an aggravated felon. So what the judge does is the judge says, you know, I'm considering your criminal history as set out in the pre-sentence report. So I think there is one level of inference that you do need to make here if we're asking whether it specifically is invoking 1326b2, but I don't think that's a difficult inference to make. His criminal history as set out in the pre-sentence report was that he was an aggravated felon and subject to sentencing under 1326b2. So the district court, right, the district court's statements of facts are focusing on the factual disagreements, and that makes sense. This isn't a factual disagreement. We're on plainer review because Mr. Calderon did not object. So there's no reason for the district court to get into it to say, no, really, you're an aggravated felon, right, because everyone's going into this proceeding with the assumption that Mr. Calderon reentered the United States, even though he'd been deported after being convicted of an aggravated felony. I do want to, I think that's a good way to talk about the plainness of the error here as well. Can I talk about whether there is an error? So, you know, so you had to go outside the record, and I'm not faulting you. I think, I certainly think you have the right as what you're saying, take judicial notice of the New York proceedings, but there's nothing in this record that would have alerted this judge to the fact that this violation under 265.03 was for, you know, which of those offenses it was. And so if we have to, if the judge would have had to go outside his or her record to determine that it wasn't an aggravated felony, how can we say, even though nobody disputes it, how can we affirmatively say that the district judge erred at prong run when a judge, understandably, is confined typically to the record before him or her? And Your Honor, I think there's a few ways to address that. First, you know, the government hasn't brought this up. They have not opposed this Court taking judicial notice. I don't think that it would be, that it's properly before the Court to consider whether or not to do that on that level. But let's say it is. You know, plainer review isn't a grading system for a judge. We expect, we reverse on plainer review, even if there was a law that the judge couldn't have known about because it didn't exist yet. The question is whether the error is plain on appeal. And the error here is plain on appeal. Only if we, only if we go outside the record. I mean, that seems a little different than the Henderson principle that you're talking about. You know, we look at the law, you know, at the time of our decision, but we don't typically say if the record below was broader than it was, then there would have been an error. And Your Honor, so again, this isn't briefed, but United States v. Castellanos Barba, which is a published Tenth Circuit case, 648 F. 3rd, 1130, says if a request to, this is not a quotation, this is a summary, if a request to supplement the record with court records from other proceedings as properly before the Court, that it must be received. So this Court doesn't have to take judicial notice of its own accord, but if I properly present it to this Court, it must be received. So it is part of the appellate record on that level. And I think from Henderson's perspective, what's important is that we're not asking, did the district court ignore something, ignore the law, ignore the facts, make a mistake? We're asking whether now, on appeal, we know that an error has been committed. And now on appeal, we do know that this error has been committed. I don't know if Your Honor still has questions on plainness of the error. Okay, in that case, I'd like to reserve the remainder of my time. Okay. Paul, why don't you stop our time. We're not prejudicing your rebuttal. No. Okay. Thank you. Good morning, Your Honors. Counsel, and may it please the Court, I'm James Braun on behalf of the United States. The defendant has failed to meet his burden under plain error review of establishing that the district court committed obvious error or that any such error affected his substantial rights. But you did not raise the argument that Judge Bachrach has been making here today for you. No, we have not opposed taking judicial notice of these other documents. We agree that there was error on the part of the government and on the part of probation in labeling the defendant as an aggravated felon. What the defendant has failed to do is establish that the district court committed error, and that's what's required. There's no indication that the district court sentenced the defendant as a B-2. The district court never references the aggravated felony at sentencing, never says he's a B-2, never says he's an aggravated felon, and the judgment in line with the indictment simply says 1326A and B. Because I combed the same thing you're talking about. I could not find where the district court ever even came close to mentioning what you're talking about here. In other words, it's just not there. That's right. The court never mentions that the prior is an aggravated felony or that the defendant is a B-2. And really, that wasn't an issue for the district court. What the district court was focused on was the conduct underlying these priors, including the misdemeanors. It wasn't the categorization of them. It was the fact that they involved violence. And the district court specifically mentioned that. This district court did say it was accepting the PSR and relying on it. It did not. It said it didn't. Right. Or without change. That is correct. In the judgment. And then adopting it without change, the PSR clearly says aggravated felony. Right. Our point is, and that's in the judgment that's issued after sentencing, that might be error. But that's not error that the defendant has pointed to. The defendant has to point to specific error. Now, maybe adopting the pre-sentence report was error because the pre-sentence report inaccurately labels him as a B-2. But at sentencing, the district court never says, I adopt the pre-sentence report. I find him to be an aggravated felon. I find him to be convicted under B-2. Never says any of that. And that, of course, influences how the district court goes about its sentencing. Why does that matter? Well, it matters because to show that there is error that is plain from the record. And that is the defendant's burden. Well, your argument is there's plain error in the PSR. And even though the PSR was before the judge and the judge read it, that we can't infer that the judge was aware of the aggravated felony reference? Certainly, the judge was aware of it. The judge had that before it from the – It seems to me you're making an argument not that it was an error, but that any error was harmless. That it didn't affect his substantial rights. Well, we are arguing that there was not plain error on the part of the district court because the district court did not plainly sentence him as a B-2. It did not adopt the pre-sentence report at the sentencing hearing. And the judgment, although it adopts the pre-sentence report, it doesn't reflect that the conviction was for a B-2. And that's something that under plain error review, the defendant has failed to show that it's obvious. Now, the defendant then says, well, it would be error to not choose between B-1 or B-2. That's not obvious either that the district court has to choose. Well, I'm picking up what difference does it make if we say, okay, we agree that there was error, but have they sustained their burden of showing that the sentence is going to be any different? Right. And we would argue that they have not. So moving to the third prong of plain error review, the defendant should show, should be required to show, in accordance with this court's precedent, that the error affected his substantial rights. That is how this court has addressed this type of statutory range error in the past in Marquez and in Carrillo-Torres. Both unpublished cases, but those courts went through the proper plain error analysis without applying any sort of a presumption that the error was prejudicial or affected substantial rights. The defendant is arguing that we should adopt a per se rule with respect to sentencing range errors that compares to our law with regard to guidelines range errors. Why is that not the right way to go? Well, first, every other court that has considered that has rejected it. Most recently, the court in Dominguez that we cited in the 28-J letter saying it was an emphatic no that other circuits would adopt that kind of a presumption. And that makes sense because while now Justice Gorsuch in, it was the Sabayon case, the Tenth Circuit case, where he wrote for the court that the essential starting point for every sentencing. The same simply does not hold true. What about the parsimony principle? Isn't that the starting point for any district judge to decide the sentence? But that doesn't necessarily take into account the statutory range. Why not? In terms of the seriousness of the offense. Well, the seriousness of the offense, and especially in this type of case, a reentry case, the Supreme Court has explicitly held the offense is the reentry. Everything else is a penalty provision. The offense is simply 1326A, reentry after previously having been deported. The sentencing provisions don't relate to the offense itself, which is the reentry. And so the courts don't necessarily have to factor in the statutory sentencing range the same way they do with a guideline range sentencing. The statutory range merely sets the outer boundaries of what's permissible, whereas in every single case, the district court has to start with the guideline range. And the guideline range permeates then everything under 3553A in a way that the statutory range simply does not. And, you know, as the court said in McLeod, the Sixth Circuit case from 2013, you know, there the court recognized that in the normal sentencing proceeding, it's not as if the district court determines what the statutory range is, determines the sentence within that range, and then looks to see if that comports with the guideline range. Rather, the court looks at the guideline range and says, That's the very first thing the court has to calculate. And then from there applies the 3553A factors. Let me ask you one, and I believe it was the majority in McLeod. I mean, the McLeod author for the majority, as I recall, says in every, you know, for every sentencing judge that he was aware of, that's how they do it. That they calculate the appropriate sentence and then they use the statutory range as the check, the cap. But, you know, it seems a little counterintuitive for us to be, you know, talking about our personal experiences anecdotally and talking with people or drawing on prior experience as Judge Baldock was for a number of years as a district judge. It just, you know, how do we know? You know, maybe a lot of judges do take the approach that Ms. Keval has outlined. If you're talking about the statutory range in terms of the key ingredient for the seriousness of the offense, the seriousness of the criminal history, the parsimony principle, the first thing that appears in the PSI, you know, how do we know that the panel majority in McLeod was correct about how judges go about imposing sentences? We do know it's a big deal, you know, of what Congress has enunciated as the cap of the appropriate sentence. So, you know, why is it so intuitive that we would distinguish between guideline ranges and statutory maxima as, you know, as the focal point for a presumption? Well, we know the importance of the guideline range because that's what the Supreme Court has said. That's the first thing the sentencing court has to determine and look at is the guideline range. That forms, and again, as this court said in Savillon, that's the essential first step. There's only one first step. There can't be two. That first step is looking at the guideline range. And so where in McLeod the majority writes at page 603 that having reviewed innumerable sentencing transcripts, this is how district judges do sentencing, that's in line with Supreme Court directive. That's what district courts are required to do. And I don't think that McLeod then says, and then in every case the court looks at the statutory range and makes sure it's within that, because that doesn't happen generally. What the court says is that the statutory sentencing range just provides the outer boundaries and limits any potential variance. And that does make sense. If the court's looking at varying widely, then the court might look and say, okay, there's a 20-year statutory max. I can't go over that, but I'm going to go up to that. Or . . . Well, you say that the beginning point is the guidelines, but anecdotally most of my district court friends, they read the PSR before they get on the bench. So the first thing they do is they read that document. And that document here gave inaccurate information about the statutory range. Going back to Judge Bacharach's question, how do we know that that inaccurate information about the statutory range that was already in the judge's ad, when the judge starts calculating the sentence based on guidelines, looking at the guideline range and deciding on a sentence, doesn't impact the ultimate conclusion of where that sentence should be? Well, and this all comes down to the standard of review and it being on plain error review. And the fact is the guidelines are unique, right, because they are the essential starting point. And so that's the reason the Supreme Court adopted the presumption that an error in guideline range calculation affects substantial rights. And that's a presumption this court already had in Savillon. But not all procedural error is subject to a presumption of prejudice. And so perhaps when the court reads the PSR and gets that in the judge's head, that this is an aggravated felony with a 20-year statutory maximum, maybe that does impact the judge. And if it's clear from the sentencing transcript, then that would affect substantial rights and that would be reversible plain error. But there's no reason for a presumption. The statutory range does not have that kind of an impact on the sentencing that it gives rise to a presumption. And Marquez, the case cited by the defense in their 20HA, provides a very good juxtaposition for this case because there the district court did mention the aggravated felony and this court said that was front and center in the district court's mind. We have nothing like that here. What if the judge has a prejudice against a particular ethnicity? And I'll just say Puerto Ricans. And the judge says, you know, I know that the defendant is Puerto Rican and statistically Puerto Ricans have a higher degree of recidivism. Is that, now would there be a, that's just a procedural error. It's not a substantive error, right? So, but wouldn't something like that implicitly create a trigger, a presumption of prejudice? I'm sorry. Yeah, no, that's a question. It might. That would seem to be a constitutional error where it may be a due process violation or an equal protection violation, not a procedural error like this. Well, we're not talking about whether it was an error. It obviously was an error. You started by acknowledging prong one. So the question is at prong three, whether it affected the defendant's substantial rights. And so that procedural error, unlike the procedural errors you identified in your brief, that might very well, even though it's just procedural, might trigger a presumption of prejudice, just like Ms. Cavall is indicating. And so how do we draw the line between that and an obvious error, thinking that this was an aggravated felony when it obviously wasn't? Well, I think there would have to be a distinction between an error of constitutional dimension, a procedural error even of constitutional dimension, where you're factoring in a defendant's race or ethnicity into the determination of the sentence. That gives rise to other concerns. Whereas here, when the Supreme Court was deciding whether to apply a presumption, and it never explicitly came out and said there's a presumption. That's how it's been interpreted in Molina. But because of the central role that the guidelines play in sentencing, there really nothing else does. The court, the very first thing it has to do is determine that guideline range. And if it gets it wrong, everything that follows from there is skewed. And so there it makes sense to have a presumption. It doesn't make the same sense here. One final thing, I notice I'm out of time, if I could just make the point as far as putting the presumption aside whether prejudice was shown here. The one thing the defense really points to is that the court said at sentencing, I could have sentenced you to more time. And I would just note that right before that, the court had sentenced the defendant for the supervised release violation to a low end of 12 months, and had run half of that concurrent. And so when the court then at page 20 of the transcript says your sentence could have been higher, it references then what it imposed as to both crimes. And so yes, it could have been higher on the supervised release. It could have been a high end. It could have been all consecutive as the guidelines would call for. It could have also been at the top of the range for this offense. That does not in any way implicate the statutory maximum of 20 years, which was 15 years higher than what the court gave. That simply had no role in this sentencing. Thank you. Thank you. Paul, they went over a little over time, so would you give her an extra minute? The government just said that the court doesn't have to factor in the statutory range. And that's the premise of the entire argument the government is making, is that the court doesn't have to know or ever consider or figure out what the sentencing range is. That cannot possibly be true. No court has ever said that to you. I think Congress would be pretty surprised. The Supreme Court in Eleni has said, you know, when the defendant is facing a different sentencing range, that changes the defendant's expected sentence. You can't even calculate the guidelines range without knowing what the statutory range is because you can't determine whether there's a floor or ceiling to cap the guidelines range. So I just think that that premise that the government is resting on simply needs to be rejected. And without it, they really aren't left with anything. This court doesn't have to say that the guidelines range is the same as the statutory range. The question is whether they have this material similarity where they put upward pressure on the final sentence, which, again, Congress has instructed that it should. The Supreme Court says that it does in Eleni. And just thinking cognitively about how our brains work, knowing that number puts pressure on the sentence. Well, I come back to the case that we actually have in front of us because what we would be doing, we already know, all of us know, that if there's a misstatement or a wrong statement in the guidelines that the district judge is for, that's wrong. And that's going to get appealed and probably going to get a reverse. What you're asking us here to do is based upon the language that was used by the district court to raise that language to an automatic reversal. That's the way, in my poor mind, that I'm visualizing this case. So based upon the language that the district court used here, which is different from Judge Anderson's language in the other, I remember the judge's name. I don't remember the name of the case. He was very explicit as to the animosity almost of the district court in that case. And as a consequence, it got reversed. But I don't see that, and you need to help me in this case, in your case, because the trial court never mentions anything. He just, even though I agree that the language could have been error from that standpoint, but he did not, there's no evidence of him taking that into consideration in his language. And, Your Honor, I think the evidence is when he says, I'm looking at your criminal history is reflected in the pre-sentence report. I think that is exactly what's reflected in the pre-sentence report. I also, Your Honor, said automatic reversal. Judge McHugh, you said per se rule. I want to remind you that this is a presumption, that government always can step forward with evidence, which it didn't do in this case, to affirmatively show that it didn't matter and that there was no prejudice. So we're asking for that presumption, but even without it, I think that there is enough on the record here when you have a 200% of what the actual statutory maximum is and a focus on the criminal history and its severity that in this case you should reverse. Okay. Thank you very much. This matter is submitted.